UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SIMMIE KENDRY,

                 Plaintiff,

vs.                                     Case No. 3:15-cv-248-J-34MCR

CO I KRAFT, et al.,

                 Defendants.

_____

**<u>ORDER</u>**

### I. Status

Plaintiff Simmie Kendry, an inmate of the Florida penal system, initiated this action on January 6, 2015, pursuant to the mailbox rule, by filing a pro se "Civil Tort Complaint" (Complaint; Doc. 2) in the Circuit Court of the Third Judicial Circuit in and for Columbia County, Florida. On March 4, 2015, the Defendants removed the case from state court. <u>See</u> Notice of Removal (Doc. 1). Kendry filed an Amended Civil Rights Complaint Form (Amended Complaint; Doc. 36) under 42 U.S.C. § 1983 with exhibits (P. Ex.) on October 15, 2015. In the Amended Complaint, Kendry names the following individuals as Defendants: (1) Corrections Officer Kraft; (2) Sergeant Roach; (3) Kathy Todd, Administrative Assistant for Corizon Health Services (Corizon) at Columba Correctional Institution (CCI); and (4) Warden M. Barnes. He asserts that the Defendants violated his federal constitutional rights when: (1) Kraft and Roach failed to protect him from a September 29, 2014 assault by two inmates after Kendry notified them that his cellmate had threatened him; (2) Defendants, specifically Roach, failed to

properly secure and protect his personal property; (3) Todd failed to schedule him for medical or diagnostic examinations or dressing changes for his injuries; and (4) Warden Barnes denied him protective custody after the assault and follow-up medical care.

This matter is before the Court on Defendants' motions: Defendants Kraft and Barnes' Motion to Dismiss (Motion to Dismiss; Doc. 39); Defendant Kathy Todd's Motion to Dismiss or, Alternatively, for Summary Judgment (Todd's Motion; Doc. 40); and Defendants Kraft and Barnes' Motion for Sanctions (Motion for Sanctions; Doc. 42). The Court advised Plaintiff of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the motions. See Summary Judgment Notices (Docs. 10, 19, 41, 50). Plaintiff filed responses in opposition to Defendants' motions. See Traverse to Motion to Dismiss (Traverse; Doc. 46); Plaintiff's Summary Judgment in Traverse to Defendants' Motion to Dismiss (Motion/Traverse; Doc. 48); and Motion to Deny Defendant's Motion to Dismiss or Alternative Summary Judgment (Response; Doc. 49). The motions are ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v.

2

<u>Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See <u>Omar ex. rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556); see <u>Miljkovic v. Shafritz & Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (citation and footnote omitted). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262

3

(explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Summary Judgment Standard

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Rule 56(c)(1)(A).[1]

---

[1] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no

"An issue of fact is material if, under the applicable substantive law, it might affect the outcome of the case[,] and "[a]n issue of fact is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (citations and internal quotation marks omitted).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (per curiam) (citations and internal quotation marks omitted). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of

---

genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

<u>Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994) (per curiam)).

### IV. Amended Complaint[2]

Kendry asserts that two Latin King gang members[3] named Bledsoe and Rodriguez "brutally attacked" and stabbed him with a knife on September 29, 2014, at approximately 9:00 p.m. in G dormitory at CCI. Amended Complaint at 5. According to Kendry, the incident was "caught on camera" and is documented in medical records and

---

[2] In considering the Motion to Dismiss, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the facts recited here are drawn from the Amended Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on motions only brought by Kraft, Barnes and Todd, the Court's recitation of the facts will focus on Kendry's allegations as to them.

[3] According to Kendry, inmate Bledsoe was his cellmate, and inmate Rodriguez was Kendry's co-defendant. <u>See</u> Amended Complaint at 5.

incident reports. Id. He asserts that, as a result of the alleged assault, he experiences numbness on the left side of his body and suffers extensive brain damage that causes headaches, nosebleeds, deafness, visual impairment, progressive memory loss, equilibrium issues with stroke-like symptoms, slurring of speech accompanied by his mouth twisting to the left, and walking difficulties. See id.

Kendry states that four days prior to the alleged attack he notified Defendant Kraft about a death threat by Bledsoe and requested a cell change or protective custody. See id. According to Kendry, Kraft responded, "you need to learn to f--k or fight" and ordered Kendry to return to his assigned dormitory. Id. Kendry asserts that, later that afternoon, he informed Defendant Roach about Bledsoe's threat and requested protection. See id. Kendry states that Roach responded, "I will look into this later," and directed Kendry to return to his cell. Id.

According to Kendry, during Roach's escort of Kendry to the medical department following the attack, Roach told Kendry that he had secured all of Kendry's property. See id. Kendry states that he later learned that his property[4] had been left unsecured. See id. at 6. He asserts that the captain directed the nurse to treat and document all visible and non-visible wounds; the nurse treated his visible wounds with "some sort of chemical agent and bandages," but

---

[4] According to Kendry, his personal property, including a radio, combination lock, batteries, clothes, jewelry, shoes, food, and hygiene products, was missing. See Amended Complaint at 6.

there was "no treatment" for his non-visible wounds. Id. at 6-7. Kendry avers that Defendant Todd "failed to schedule" him "for any doctor examination, x-rays, MRI's, cat scans, or even dressing changes for his injuries" and when he inquired she "merely stated 'put in for sick call.'" Id. at 7; see P. Ex. C, Inmate Request to Medical, dated October 6, 2014.

With regard to Warden Barnes, Kendry states that after the attack he told Warden Barnes: the attack was gang-related, he had been receiving death threats since he had been placed in administrative confinement, he feared gang members would try to kill him if the Department released him from administrative confinement, and that he did not have any follow-up medical treatment. See Amended Complaint at 7. He asserts that Barnes denied him protective custody on October 7, 2014, at an Institutional Classification Team (ICT) hearing, and also denied him follow-up medical care. See id.

### V. Defendant Kathy Todd

Defendant Todd requests that the Court: (1) dismiss Kendry's claims against her because he failed to state a claim upon which relief can be granted or, alternatively, enter summary judgment in her favor, or (2) dismiss the case in its entirety for Kendry's abuse of the judicial process as a sanction "for his blatantly

false misrepresentations to this Court."[5] Todd's Motion at 2. In support of Todd's Motion, she refers to and incorporates her previously-filed Declaration. See Notice of Filing (Doc. 7), attached Declaration of Kathy Todd (Todd's Declaration; Doc. 7-1), dated March 6, 2015. Kendry filed a response in opposition to Todd's Motion. See Response (Doc. 49). In the Response, he asserts that Todd violated his Eighth and Fourteenth Amendment rights when she failed to schedule him for follow-up medical treatment for injuries sustained in the September 29, 2014 assault, but instead advised him to seek medical care through the prison's sick call procedures.

Todd relies on her Declaration as evidence that she is entitled to summary judgment. See Todd's Motion at 4-5. She asserts that her Declaration is in the record, and requests that her Declaration be considered in deciding the Motion, and that "the Motion be treated as one for summary judgment according to the Federal Rule of Civil Procedure 12(d)." See id. at 4 n.2. Federal Rule of Civil Procedure 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

---

[5] The Court will address Defendant Todd's request to dismiss the case for Kendry's abuse of the judicial process in Section VII of this Order.

Fed. R. Civ. P. 12(d). As previously noted, the Court advised Plaintiff of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion, see Doc. 41; Plaintiff filed a response to the Motion, see Doc. 49. Accordingly, the Court will address Todd's Motion as a request for summary judgment under Federal Rule of Civil Procedure 56.

In the Complaint, Kendry asserts that Todd, an Administrative Assistant for Corizon, failed to schedule him for a doctor's examination, dressing changes, and diagnostic testing, but instead recommended that he use the sick call procedures to request medical care. See Amended Complaint at 7. He attaches the inmate request that he sent to the medical department on October 6, 2014. See P. Ex. C, Inmate Request, dated October 6, 2014, and received by the medical department on October 10, 2014. In the request, Kendry stated:

> On 9-29-14 I was beaten and stabbed by a gang of inmates called Latin Kings in G2 113.
>
> I was taken to medical where I received only band aids for my wounds[.] No follow up treatment by a doctor, Ex-rays [sic], cat scans or MRI's or dressing changes have been given to me[.] Why and who failed to follow up on the injuries period.

<u>Id.</u> Todd responded and wrote on the form "Access sick call" and returned it to Kendry. <u>Id.</u>

In Todd's Declaration, she avers in pertinent part:

> My name is Kathy Todd. I am employed by Corizon, LLC as an Administrative Assistant at the Columbia Correctional Institution in Lake City, Florida.
>
> The information contained in this Declaration is based upon personal knowledge of the events herein and my knowledge of Corizon's policies and procedures.
>
> I understand that Simmie Kendry has named me as a defendant in the lawsuit listed above and he contends that I refused to schedule him for follow up medical treatment after he was attacked by other inmates on September 29, 2014.
>
> As an Administrative Assistant, my duties include reviewing Inmate Requests, Informal Grievances, and Formal Grievances. I read, sort, and distribute the requests and grievances to the appropriate staff for answers. Nurses schedule health care appointments for inmates after inmates submit sick call requests. Sick call requests are submitted on special forms, which are triaged by members of the nursing staff. I am not a nurse, and I have no role in triaging sick call requests or in scheduling health care appointments with medical providers.
>
> **I received an Inmate Request from Mr. Kendry on October 10, 2014, which is a request for information. This was not on a sick call request form, which would have been routed to the nursing staff and not me. Upon review, I noted that Mr. Kendry's Inmate Request sought follow-up health care with a medical provider. I pulled his chart and saw that a triage nurse had assessed him on September 29, 2014. The nurse had noted edema of the lower lip, no**

**open areas, and a scratch on his left shoulder. She cleaned the wounds, applied a band aid, and instructed Mr. Kendry to sign up for sick call if he had any further problems. Because there was no indication that Mr. Kendry's Inmate Request concerned an urgent health matter, I advised him to follow the standard procedures, which was to submit a sick call request form.**

Attached as Exhibit A-1 is a true and correct copy of the Florida Department of Corrections Procedure 403.006, "Sick Call Process and Emergencies." Sick call is the process by which an inmate requests access to health care for non-urgent health needs. [Ex. A-1, p. 2.] During the initial institutional health services orientation, inmates are provided information regarding available hours and access to sick call for both emergency and non-emergency medical needs. [Id.] Sick call requests must be submitted on the proper sick call forms. [Id., p. 4.]

Todd's Declaration at 1-3 (emphasis added). In response to Todd's Motion, Kendry states that the "only claim" against Todd is that she "failed to schedule [him] for follow up medical treatment" after the alleged assault. Response at 1. He also asserts that Todd exceeded her job description when she interfered with his request for medical treatment and read his confidential medical records. Id. at 5.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley,

790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriquez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

The Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[6] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[7] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by

---

[6] Farmer v. Brennan, 511 U.S. 825 (1994).

[7] Hudson v. McMillian, 503 U.S. 1 (1992).

> such conditions that gives rise to an Eighth
> Amendment violation. <u>Farmer</u>, 511 U.S. at 828,
> 114 S.Ct. at 1974 (quotation and citation
> omitted); <u>Wilson</u>, 501 U.S. at 303, 111 S.Ct.
> at 2327.[8]

<u>Thomas v. Bryant</u>, 614 F.3d 1288, 1306-07 (11th Cir. 2010).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered
> 'one that has been diagnosed by a physician as
> mandating treatment or one that is so obvious
> that even a lay person would easily recognize
> the necessity for a doctor's attention.'" <u>Id.</u>
> (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>,
> 40 F.3d 1176, 1187 (11th Cir. 1994)). In
> either case, "the medical need must be one
> that, if left unattended, pos[es] a
> substantial risk of serious harm." <u>Id.</u>
> (citation and internal quotations marks
> omitted).

<u>Brown</u>, 387 F.3d at 1351.

Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson</u>, 598 F.3d at 737 (setting

---

[8] <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).

forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245).

> In Estelle[9], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott[10] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor,[11] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46.

---

[9] Estelle v. Gamble, 429 U.S. 97 (1976).

[10] McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

[11] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

Here, the material facts relating to Defendant Todd's involvement are undisputed. The parties agree that Todd is not a medical provider; she is an Administrative Assistant employed by Corizon. The sole basis for Kendry's claim against her is that she directed Kendry to follow the policy of the Florida Department of Corrections for accessing health care. The parties also agree that Todd told Kendry to use the sick call procedures, and she wrote that recommendation on the inmate request form that she returned to him. Given these undisputed facts, Kendry has failed to show that Defendant Todd was deliberately indifferent to any serious medical needs.

Even assuming Plaintiff's allegations suggest negligence, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle, 429 U.S. at 106). Consequently, any allegedly negligent conduct of which Kendry complains does not rise to the level of a federal constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

As an Administrative Assistant, Defendant Todd was neither responsible for scheduling follow-up appointments nor tasked with deciding an inmate's follow-up treatment plan. The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional
> diagnostic techniques or forms of treatment is

16

> indicated is a classic example of a matter for
> medical judgment. A medical decision not to
> order an X-ray, or like measures, does not
> represent cruel and unusual punishment. At
> most[,] it is medical malpractice, and as such
> the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th

Cir. 1995) ("[T]he question of whether [defendant] should have

employed additional diagnostic techniques or forms of treatment 'is

a classic example of a matter for medical judgment' and therefore

not an appropriate basis for grounding liability under the Eighth

Amendment."); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.

1991) ("Nor does a simple difference in medical opinion between the

prison's medical staff and the inmate as to the [inmate's]

diagnosis or course of treatment support a claim of cruel and

unusual punishment.").

    In Todd's Declaration, she states: "Because there was no

indication that Mr. Kendry's Inmate Request concerned an urgent

health matter, I advised him to follow the standard procedures,

which was to submit a sick call request form." Todd's Declaration

at 2, ¶ 6. As chronicled in Kendry's Amended Complaint and Todd's

Declaration, Todd first reviewed Kendry's medical chart and then

advised him to follow the established sick call procedures to

request follow-up medical care. The Court finds that there are no

genuine issues of material fact as to Todd's involvement. Given the

record, Kendry has not shown that Defendant Todd was deliberately

indifferent to Kendry's serious medical needs. Therefore, Defendant

17

Todd's Motion for Summary Judgment as to Kendry's Eighth Amendment claim against her is due to be granted because there is no genuine dispute as to any material fact, and she is entitled to the entry of summary judgment on her behalf.

## VI. Defendants Kraft and Barnes

Defendants Kraft and Barnes request that the Court dismiss Kendry's: (1) state law claims for negligence or gross negligence against Kraft and Barnes in their individual and official capacities pursuant to Florida Statutes section 768.28(9)(a); (2) Eighth Amendment claims against Barnes for deliberate indifference to Kendry's needs for protection and medical care; (3) Fourth and Fourteenth Amendment claims against Kraft and Barnes for missing property; and (4) claims for monetary damages against Kraft and Barnes in their official capacities. See Motion to Dismiss (Doc. 39).

Kendry filed a response in opposition to the Motion to Dismiss. See Traverse (Doc. 46). In the Traverse, Kendry asserts that the Court should deny Defendants' Motion to Dismiss. He states that he provides sufficient factual allegations in the Amended Complaint to state claims against the Defendants in their individual and official capacities for violations of the Fourth, Eighth, and Fourteenth Amendments. See id. at 5, 8. He specifically asserts that he sufficiently states an Eighth Amendment claim against Defendant Barnes for deliberate indifference, see id. at

11, and Fourth and Fourteenth Amendment claims against the Defendants relating to his missing property, see id. at 18.

## A. State Law Claims

Defendants Kraft and Barnes request that the Court dismiss Kendry's state law claims for negligence or gross negligence against them in their individual and official capacities pursuant to Florida Statutes section 768.28. As previously stated, Kendry initiated this action in state court by filing a pro se Complaint. A few months later, the Defendants removed the case from state court. See Notice of Removal (Doc. 1). In the Notice of Removal, the Defendants Corizon[12] and Todd stated: "In the Complaint, Plaintiff alleges his federal constitutional rights under the Fourth, Eighth, and Fourteenth Amendments were violated, and does not include state-law claims." Notice of Removal at 1, ¶2. This Court agrees that Kendry does not include any state law claims in the operative complaint. See Amended Complaint at 4, Statement of Claim. Therefore, Defendants' Motion to Dismiss is due to be denied as moot as to this issue.

## B. Defendant Barnes

Defendant Barnes requests that the Court dismiss Kendry's Eighth Amendment claims against him. See Motion to Dismiss at 6-10. Barnes asserts that supervisory officials are not liable under 42

---

[12] Plaintiff does not name Corizon as a Defendant in the operative complaint. See Amended Complaint (Doc. 36) at 3; see also Response at 1, ¶ 1; 5; Todd's Motion at 1 n.1.

U.S.C. § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior. See id. at 10 n.2. Kendry opposes Barnes' request for dismissal. See Traverse at 11-14; Motion/Traverse at 4.

The United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[13] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).
>
> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[14] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary

---

[13] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

[14] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

> causal connection by showing "facts which
> support an inference that the supervisor
> directed the subordinates to act unlawfully or
> knew that the subordinates would act
> unlawfully and failed to stop them from doing
> so," <u>Gonzalez</u>, 325 F.3d at 1235, or that a
> supervisor's "custom or policy . . . resulted
> in deliberate indifference to constitutional
> rights," <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495
> (11th Cir. 1991).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008). Further, the

Eleventh Circuit stated:

> In a § 1983 suit, liability must be based on
> something more than respondeat superior.
> <u>Brown</u>,[15] 906 F.2d at 671. Supervisory
> liability can be found when the supervisor
> personally participates in the alleged
> constitutional violation, or when there is a
> causal connection between the supervisory
> actions and the alleged deprivation. <u>Id.</u> A
> causal connection can be established through a
> showing of a widespread history of the
> violation. <u>Id.</u> at 672.

<u>Reid v. Sec'y, Fla. Dep't of Corr.</u>, 486 F. App'x 848, 852 (11th

Cir. 2012); <u>Charriez v. Sec'y, Fla. Dep't of Corr.</u>, 596 F. App'x

890, 895 (11th Cir. 2015) (per curiam). Here, Kendry asserts that

Warden Barnes personally participated in the alleged violations of

Kendry's federal constitutional rights.

According to Kendry, the shift captain assigned Kendry to

administrative confinement after the September 29, 2014

altercation. Kendry states that he <u>later</u> informed Barnes that: the

attack was gang-related, Latin King gang members continued to make

---

[15] <u>Brown v. Crawford</u>, 906 F.2d 667 (11th Cir. 1990).

death threats against him, and he feared those gang members would try to kill him if the Department released him from administrative confinement. <u>See</u> Amended Complaint at 7. Kendry also asserts that Barnes denied his request for protection at an ICT hearing on October 7, 2016 (eight days <u>after</u> Kendry had been involved in the altercation), and stated, "if they stab you again or write a threat letter to you let me or any major know about it ...." <u>Id.</u> Kendry states that when he told Barnes that he "was in severe pain from the injuries sustained on the night of the attack," Barnes "simply smirked" and replied, "you'll live," and sent Kendry back to his cell. <u>Id.</u>

The Eleventh Circuit recently stated:

> "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Beyond just restraining prison officials from inflicting "cruel and unusual punishments" upon inmates, "[t]he Amendment also imposes duties on these officials, who must ... 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). To this end, the Supreme Court has made clear that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." <u>Id.</u> at 833, 114 S.Ct. 1970 (alteration in original) (internal quotation marks omitted); <u>see also</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate

has a constitutional right to be protected ...
from physical assault by other inmates.").

Deliberate indifference in the context of
a failure to prevent harm has a subjective and
an objective component, i.e., a plaintiff must
show both "that the defendant actually
(subjectively) kn[ew] that an inmate [faced] a
substantial risk of serious harm" and "that
the defendant disregard[ed] that known risk by
failing to respond to it in an (objectively)
reasonable manner." Caldwell, 748 F.3d at 1099
(alterations in original) (internal quotation
marks omitted). Not "every injury suffered by
one prisoner at the hands of another ...
translates into constitutional liability for
prison officials responsible for the victim's
safety." Farmer, 511 U.S. at 834, 114 S.Ct.
1970. Rather, a prison official violates the
Eighth Amendment in this context only "when a
substantial risk of serious harm, of which the
official is subjectively aware, exists and the
official does not respond reasonably to the
risk." Caldwell, 748 F.3d at 1099 (emphasis
omitted) (internal quotation marks omitted).
Accordingly, to state an Eighth Amendment
claim premised on a failure to prevent harm, a
plaintiff must allege facts showing that: (1)
a substantial risk of serious harm existed;
(2) the defendants were deliberately
indifferent to that risk, i.e., they both
subjectively knew of the risk and also
disregarded it by failing to respond in an
objectively reasonable manner; and (3) there
was a causal connection between the
defendants' conduct and the Eighth Amendment
violation. See id.

Bowen v. Warden, Baldwin State Prison, No. 15-11109, 2016 WL

3435501, *4 (11th Cir. June 22, 2016).

Kendry has not alleged facts sufficient to state a claim under

the Eighth Amendment in that he has shown neither that Defendant

Barnes was deliberately indifferent to his serious medical needs

nor that Barnes was deliberately indifferent to a known risk of serious harm. As <u>Iqbal</u> instructs, the Court must accept the factual allegations set forth in the Amended Complaint as true. <u>Iqbal</u>, 556 U.S. at 678. Kendry's assertions demonstrate that Warden Barnes timely reviewed Kendry's request for protection at a classification hearing and told Kendry that he could alert him or "any major" if the threats escalated and Kendry felt his life was in danger. Amended Complaint at 7. Importantly, although Kendry asserts that other gang members threatened him after the incident, he neither alleges that he told Barnes after the ICT hearing that he had been threatened or that he suffered any physical harm as a result of Barnes' failure to act.

As with any other claim brought under 42 U.S.C. § 1983, to succeed, an inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation. Kendry appears to base his failure to protect claim solely on the fact that Barnes denied him protective management status, not that Barnes possessed subjective knowledge of a serious risk of harm <u>before</u> the attack and was indifferent to that risk. Kendry has neither provided any facts showing that Barnes disregarded a known risk of serious harm by failing to respond to it in a reasonable manner nor that Barnes' denial of Kendry's request for post-incident protection caused Kendry to endure any pain or suffering violative of the Eighth Amendment.

24

Moreover, as to Kendry's assertion that Barnes denied him medical care, Kendry's allegations show that he was taken to the medical department immediately after the alleged assault where a captain directed a nurse to treat and document all visible and non-visible wounds. Kendry knew that he could request additional medical attention pursuant to the established sick call procedures. Kendry has provided no facts showing that Barnes was deliberately indifferent to his serious medical needs. For these reasons, the Motion to Dismiss as to Plaintiff's Eighth Amendment claims against Barnes is due to be granted, and the Court will dismiss Defendant Barnes from the action.

### C. Missing Property

Defendants Kraft and Barnes assert that the Court should dismiss Plaintiff's Fourth and Fourteenth Amendment claims against them because negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become constitutional violations when adequate remedies under state law are available for Kendry to seek redress for the deprivation. See Motion to Dismiss at 11 (citations omitted). They state that the Florida Department of Corrections provides an inmate grievance procedure for challenging misplaced or mishandled property, and Florida Statutes section 768.28 provides Kendry with a tort remedy for the alleged deprivation of property. Kendry opposes Defendants' Motion to Dismiss. See Traverse at 18;

Motion/Traverse at 5. He asserts that Sergeant Roach entered his cell to retrieve a pair of pants for Kendry and told him that he had secured Kendry's property in his cell, see Amended Complaint at 5, but the property slip issued that same day "reveals that the property was left unsecured on the wing and all of the Plaintiff's property [was] stolen," Motion/Traverse at 5; see P. Ex. B, Inmate Impounded Personal Property List, dated September 29, 2014.

To the extent that Kendry asserts that the Defendants deprived him of due process for not replacing his property, it is well-settled that the Due Process Clause is not offended when a state employee intentionally deprives a prisoner of his property as long as the State provides him with a meaningful post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981); Jackson v. Hill, 569 F. App'x 697, 698 (11th Cir. 2014) (per curiam); Taylor v. McSwain, 335 F. App'x 32, 34 (11th Cir. 2009) ("Regarding deprivation of property, a state employee's unauthorized intentional deprivation of an inmate's property does not violate due process under the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Kendry has an available, adequate post-deprivation remedy under state law. "Under Florida law, [a plaintiff] can sue the officers for the conversion of his personal property." Jackson, 569 F. App'x at 698 (citing Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009)). Moreover, any assertion that the Defendants were

grossly negligent when they failed to ensure that his property was replaced or returned does not rise to the level of a Fourteenth Amendment violation. See Maddox v. Stephens, 727 F.3d 1109, 1119 (11th Cir. 2013) (stating mere negligence does not rise to the level of a substantive due process violation).

To the extent that Kendry complains about the Defendants' negligent acts and unprofessional conduct in moving and storing his property, the law is well-settled that the Constitution is not implicated by the negligent acts of prison officials. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Consequently, the allegedly negligent conduct of which Kendry complains does not rise to the level of a federal constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. Therefore, Defendants' Motion to Dismiss as to Kendry's Fourth and Fourteenth Amendment claims against Kraft and Barnes for Kendry's missing property is due to be granted.

### D. Eleventh Amendment

Defendants Kraft and Barnes request that the Court dismiss Kendry's claims for monetary damages against them in their official capacities. See Motion to Dismiss at 12. Kendry opposes Defendant's request and states that he is entitled to monetary damages against

27

them in their official and individual capacities. <u>See</u> Traverse at 20; Motion/Traverse at 5. In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>, 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. <u>Id.</u> Thus, insofar as Kendry seeks monetary damages from Defendants Kraft and Barnes in their official capacities, the Eleventh Amendment bars suit. Therefore, Defendants' Motion to Dismiss with respect to Kendry's claims for monetary damages against them in their official capacities is due to be granted because they are absolutely immune from such damages in their official capacities.

## VII. Abuse of the Judicial Process

Defendants Kraft, Barnes and Todd request that the Court dismiss this case as malicious for Kendry's abuse of the judicial process when he omitted information about his previously-filed federal cases and denied knowledge of those cases. <u>See</u> Motion for Sanctions at 1, 3, 7; Todd's Motion at 9-10. Defendants submit the

Declaration of Albert Carl Maier, M.D. (Maier's Declaration; Doc. 42-1) in support of their request. Dr. Maier avers:

> Mr. Kendry has not taken any medications which would substantially impact his memory. Mr. Kendry's prescription for Prozac could potentially impact his ability to concentrate, but the use of that drug would not result in memory loss.

Dr. Maier's Declaration at 1, ¶ 3. Kendry opposes the dismissal of his case and asserts that the alleged abuse of the judicial process has been cured by his filing of an Amended Complaint. Response at 5; Motion/Traverse at 3.

A brief chronology follows. Kendry initiated this action in state court by filing a Complaint. In the Complaint, Kendry omitted his previously-filed federal lawsuits, including those dismissed as frivolous, malicious or for failure to state a claim. See Complaint (Doc. 2) at 2. After the Defendants removed the case from state court, this Court directed Kendry to file a declaration addressing why he: (1) initially failed to provide the pertinent case information relating to his prior federal cases; (2) later asserted that he did not file the five federal cases, but that those cases may have been filed by family members; and (3) elected to file an amended complaint to correct the deficiencies and avoid subjecting himself to possible sanctions. See Order (Doc. 35) at 3-4, ¶ 8 (citation omitted). In accordance with the Court's directive, Kendry filed a Sworn Affidavit (Kendry's Affidavit; Doc. 38) on October 15, 2015. In Kendry's Affidavit, he asserts that he has

29

been taking psychotropic medications and suffers memory loss. <u>See</u> Kendry's Affidavit at 3. He acknowledges his five previously-filed federal cases, and states that he failed to reveal the cases and later denied knowledge of the cases due to the effects of "powerfully mind altering medications." <u>Id.</u> at 7.

Given the record, including the fact that Kendry has filed an Amended Complaint that lists his previously-filed federal cases, <u>see</u> Amended Complaint at 2, and that Kendry has asserted "progressive memory loss" from the alleged beating, <u>see</u> Amended Complaint at 5; Complaint at 5; <u>see</u> <u>also</u> Kendry's Affidavit at 3, Defendants Kraft, Barnes and Todd's request to dismiss the case as malicious due to Kendry's abuse of the judicial process are due to be denied. Nevertheless, the Court will admonish Kendry in Section IX of this Order.

## VIII. Plaintiff's Motion for Summary Judgment

Kendry asserts that summary judgment should be granted in his favor "for damages for the prolonged pain and suffering in the complaint." Motion/Traverse at 5. Defendants Kraft and Barnes responded in opposition to Plaintiff's Motion/Traverse. <u>See</u> Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 52). They assert that Kendry's motion for summary judgment should be denied without prejudice as premature, <u>see</u> <u>id.</u> at 1-2, because they "have not conducted discovery necessary to present facts essential to opposing Plaintiff's allegations," <u>see</u> <u>id.</u> at 3,

and this Court agrees. At this stage of the litigation, Plaintiff has failed to show that he is entitled to summary judgment as a matter of law based on undisputed material facts. Therefore, Plaintiff's motion for summary judgment is due to be denied without prejudice to his right to refile a motion for summary judgment after further development of the record.

### IX. Notice to Plaintiff

While the Court will not dismiss Kendry's case as a sanction for abuse of the judicial process, Kendry should be mindful of the following directives in approaching the Court and filing documents for the Court's consideration. The Court has the authority to control and manage matters such as this pending before it. The Court firmly believes that Plaintiff, like other litigants before the Court, must conform to acceptable standards. This Court will not tolerate incomplete, misleading, or false responses and/or statements in any pleading or motion filed for the Court's consideration. If the Court cannot rely on the statements and/or responses made by the parties, it threatens the quality of justice.

Therefore, it is now

**ORDERED**:

1.   Defendants Kraft and Barnes' Motion to Dismiss (Doc. 39) is **GRANTED** as to Defendants' request that the Court dismiss Plaintiff's: (1) Eighth Amendment claims against Barnes for deliberate indifference to Kendry's needs for protection and

medical care; (2) Fourth and Fourteenth Amendment claims against Kraft and Barnes for Kendry's missing property; and (3) claims for monetary damages against Kraft and Barnes in their official capacities. The Motion to Dismiss is **DENIED as moot** as to Defendants' request that the Court dismiss Plaintiff's state law claims for negligence or gross negligence against Kraft and Barnes in their individual and official capacities pursuant to Florida Statutes section 768.28(9)(a).

2.    Defendant Warden M. Barnes is **DISMISSED**. Judgment to that effect will be withheld pending adjudication of the action as a whole. See Fed. R. Civ. P. 54.

3.    Defendant Kathy Todd's Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. 40) is **GRANTED** to the extent that summary judgment is entered in her favor as to Plaintiff's Eighth Amendment claim. Judgment to that effect will be withheld pending adjudication of the action as a whole. See Fed. R. Civ. P. 54.

4.    Defendant Todd's request to dismiss the case for Kendry's abuse of the judicial process (Doc. 40) is **DENIED**.

5.    Defendants Kraft and Barnes' Motion for Sanctions (Doc. 42) is **DENIED**.

6.    Plaintiff's Motion for Summary Judgment (Doc. 48) is
**DENIED without prejudice** to his right to refile a motion for
summary judgment after the Court sets deadlines for discovery and
the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of
August, 2016.


**MARCIA MORALES HOWARD**
United States District Judge


sc 8/23
c:
Simmie Kendry, FDOC #102106
Counsel of Record