UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SIMMIE KENDRY,

    Plaintiff,

vs.                                                                                                 Case No. 3:15-cv-248-J-34MCR

CO I KRAFT[1], et al.,

    Defendants.

## **ORDER**

### **I. Status**

Plaintiff, Simmie Kendry, an inmate of the Florida penal system, initiated this action on January 6, 2015, pursuant to the mailbox rule, by filing a pro se "Civil Tort Complaint" (Doc. 2) in the Circuit Court of the Third Judicial Circuit in and for Columbia County, Florida. On March 4, 2015, the Defendants removed the case from state court. See Notice of Removal (Doc. 1). Thereafter, Kendry filed an Amended Civil Rights Complaint Form (Amended Complaint; Doc. 36) under 42 U.S.C. § 1983 with exhibits (Pl. Exs.). In the Amended Complaint, Kendry names the following individuals as Defendants: (1) Corrections Officer Kraft; (2) Sergeant Roach; (3) Kathy Todd, Administrative Assistant for Corizon Health Services at Columbia Correctional Institution (CCI); and (4) Warden M. Barnes.

---

[1] Defendant Kraft has requested the Court correct the caption to reflect his proper first initial as "E," not "I." See Doc. 84 at 1 n.1.

Following this Court's Order dismissing Defendants Todd and Barnes,[2] two Defendants remain: Roach and Kraft. Kendry asserts Defendants Roach and Kraft acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments by failing to protect him from an attack by two other inmates. Amended Complaint at 4. This matter is before the Court on the parties' cross-motions for summary judgment. In Kendry's Motion, filed on June 12, 2017, Kendry asserts he is entitled to judgment in his favor because Roach and Kraft were deliberately indifferent to a serious risk of harm.[3] (Kendry Motion; Doc. 78). In support of his Motion, Kendry relies upon his sworn affidavit (Kendry Affidavit; Doc. 78-1), his Amended Complaint (Docs. 36, 78-2), which is signed under penalty of perjury, Defendants' Answers to his Amended Complaint (Roach Answer; Doc. 72; Kraft Answer; Doc. 61), and a request for discovery he sent to Roach and Kraft.

Roach and Kraft filed a Motion for Summary Judgment on August 14, 2017 (Defense Motion; Doc. 84), asserting Kendry did not advise either of them prior to the attack that he was in fear of his cellmate (one of the two inmates who attacked him) or that he needed protection. Defense Motion at 2. They further assert Kendry is not entitled to compensatory or punitive damages because he has not established more than a de minimis injury. Id. at 8-9. In support of their Motion, Roach and Kraft submit their own declarations, the declaration of Dr. Maier with supporting medical records, excerpts of

---

[2] On August 25, 2016, the Court granted Defendant Todd's Motion to Dismiss or for Summary Judgment and granted Defendant Barnes' Motion to Dismiss. See Order (Doc. 56) at 32. The Court also dismissed Kendry's claim against Kraft for his missing property. See id.

[3] Kendry also asserts Roach and Kraft are not entitled to qualified immunity. Roach and Kraft, however, do not raise a qualified immunity defense in their Motion for Summary Judgment. This Court previously dismissed Kendry's claim against Kraft, in his official capacity, for monetary damages. See Order (Doc. 56) at 32.

Kendry's deposition testimony, and disciplinary reports for the inmates who attacked Kendry (Def. Exs. B-F[4]). On October 26, 2017, Kendry responded to Roach and Kraft's Motion for Summary Judgment, asserting the same arguments as those presented in his Motion (Kendry Response; Doc. 87). Specifically, he re-asserts he "advised both Defendant Roach and Defendant Kraft of issues he was having with an inmate, he was in fear for his life, and request[ed] to be moved or placed in protective management." Kendry Response at 2. The Motions are ripe for the Court's review.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Rule 56(c)(1)(A).[5] "An issue of fact is material if, under the applicable substantive law, it might affect the outcome of the case . . . .[and] [a]n issue of

---

[4] Exhibit A in support of Roach and Kraft's Motion for Summary Judgment is Kendry's "face sheet."
[5] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Id. Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

fact is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (per curiam) (citations and internal quotation marks omitted). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004).

Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994) (per curiam)).

**III. Facts**

Because the Court is presented with cross-motions for summary judgment, it must first ascertain whether the facts are in dispute. If the Court finds factual disputes regarding issues of material fact, then it must deny both motions. Griffis v. Delta Family-Care Disability, 723 F.2d 822, 824 (11th Cir. 1984) ("[B]efore the court can consider the legal issues raised by the parties on cross-motions for summary judgment, it must have no doubt as to the relevant facts that are beyond dispute.") The parties disagree on two points: (1) whether Kendry notified Roach and Kraft prior to the attack that he was in fear for his life and requested protection; and (2) the nature and extent of Kendry's injuries resulting from the attack.

**A. Failure to Protect Claim**

Kendry asserts that two Latin Kings gang members named Bledsoe (Kendry's cellmate) and Rodriguez "brutally attacked" and stabbed him with a knife on September 29, 2014. Amended Complaint at 5. Kendry asserts that, four days prior to the attack, he told Kraft "he was having problems with his roommate, inmate Bledsoe . . . and that he needed a room change or protective custody . . . because inmate Bledsoe had stated: 'I don't like you faggot ass n\*\*\*er and they need to kill all you mother\*\*\*\*ers.'" Id.; Kendry Affidavit at 3. [6] According to Kendry, Kraft responded, "you need to learn to f\*\*k or fight" and ordered Kendry to return to his assigned dormitory. Kendry Affidavit at 3. Kendry asserts that, later that afternoon, he informed Roach about Bledsoe's "threat on his life"

---

[6] Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

and requested protection. Id. Kendry states that Roach responded, "I will look into this later," and directed Kendry to return to his cell. Id.

Roach and Kraft concede Kendry "was assaulted by Bledsoe and Rodriguez" on September 29, 2014. Roach Answer at 2; Kraft Answer at 2. Indeed, a prison official's review of the fixed-wing camera footage from Kendry's cell block confirmed the attack:

> I observed inmates Bledsoe, Barry . . . and Rodriguez, Christopher . . . striking inmate Kendry inside of cell G2-113. Inmate Kendry then ran out of the cell and proceeded up the stairwell. Inmates Bledsoe and Rodriguez then exited the cell (G2-113) and followed inmate Kendry up the stairs. At approximately 2115 hours inmate Kendry attempted to walk past inmate Bledsoe to go back down the stairs and inmate Bledsoe struck him in the facial area with a clinched fist. Inmates Bledsoe and Rodriguez were placed in Administrative Confinement. . . .

Def. Ex. D (Doc. 84-4) at 4. While Roach and Kraft agree that Bledsoe and Rodriguez attacked Kendry, they assert, as an undisputed fact, that "[t]here is no evidence that [Kendry] advised either Defendant Roach or Kraft of any issues he was having with any inmate, he was in fear for his life, or [made] any requests to be moved or placed in protective management." Defense Motion at 2. Indeed, in their sworn declarations, each attests he was "never made aware by Mr. Kendry of any issues he was having with any inmate in September 2014." Def. Exs. B, C (Docs. 84-2, 84-3). Roach and Kraft each further state that, had Kendry informed him that he (Kendry) was having an issue with an inmate, he (the officer) would have separated Kendry and that inmate, informed his superiors, and created an incident report.[7] Id.

---

[7] Roach and Kraft further rely on Kendry's sworn deposition testimony in which Kendry conceded he did not file a grievance prior to the attack. Def. Ex. E (Doc. 84-5) at 2-3.

In addition, Roach and Kraft note that Kendry did not accuse them of failing to act until "several weeks" after the attack when, on October 20, 2014, Kendry submitted a grievance, claiming that four days prior to the attack he had reported to Kraft that he was having "problems" with his roommate. Defense Motion at 5; Pl. Ex. A at 13. Roach and Kraft also rely on a grievance Kendry filed two days after the attack, on October 1, 2014, in support of their assertion that Kendry did not immediately implicate them. Defense Motion at 5. In that grievance, Kendry complained that:

> [the] attack could have been prevented if the staff would not have placed a know[n] Latin King in the cell with a black in the [illegible] . . . . The Administration caused me to be beaten, and stabbed in the back by the hate mongers. . . . I've been here five years and I haven't had any problems with my roomates [sic] until they put these radical Latin Kings in my cell. (I'm also receiving death threats while in confinement from this gang.)

Pl. Ex. A (Doc. 36-1) at 5-6. Kendry does not reference Roach or Kraft in this grievance,[8] nor does he suggest that he reported to anyone he was in fear of his life or feared a particular inmate. See id. In Kendry's Response to Roach and Kraft's Motion for Summary Judgment, he argues he did "implicate Kraft and Roach immediately after the incident occurred." Kendry Response at 5.

---

[8] Five days after Kendry submitted this grievance, on October 6, 2014, Kendry submitted an inmate request in which he sought the "name and rank of the housing official whom [sic] placed inmate Bledsoe" in his cell, and he sought the name and rank of the officers on duty in his dorm on the day of the incident, and on September 24, 2014, five days prior to the incident. See Pl. Ex. A (Doc. 36-1) at 12. Presumably, in this request, Kendry was seeking the names of those officers to whom he claimed to have reported Bledsoe's threat. For reasons set forth in this Order, the date Kendry actually implicated Roach and Kraft is not determinative.

## B. Kendry's Injuries

Kendry alleges suffering numerous physical injuries as a result of the attack: "extensive brain damage that consistently causes him headaches, nosebleeds, . . . deafness in both ears, visual impairment in both eyes, progressive memory loss, equilibrium impairment that causes stroke like [symptoms], slurring of speech with mouth twisting to the left and stagnant walking ability." Amended Complaint at 5. In his Motion for Summary Judgment, Kendry asserts he also suffers from numbness on the left side of his body. Kendry Motion at 3; Kendry Affidavit at 3. During his deposition, taken on January 4, 2017, Kendry testified to additional physical injuries that he attributes to the attack: a broken finger, pinched nerve in his back, and facial damage (permanent indentation). Def. Ex. E (Doc. 84-5) at 11-12. Kendry testified he told the nurse that his finger hurt when he reported to medical on the day of the attack. Id. at 6, 11. Kendry said he knew it was broken because of "the way it swelled," but he conceded he has never had his finger diagnosed as broken and did not seek follow-up treatment after the day of the attack. Id. at 8-9.

Because in Roach and Kraft's Motion for Summary Judgment, Defendants assert as an undisputed fact that "there is no evidence Kendry was stabbed," see Defense Motion at 3, Kendry notes that Bledsoe and Rodriguez were found guilty of stabbing him. Kendry Response at 5. Kendry also contends that the dorm camera and his medical reports from the day of the attack confirm Bledsoe and Rodriguez "beat and stabbed [him] . . . with their fists and a knife in the area of [his] head, back, chest, abdomen and face."[9]

---

[9] Disciplinary reports for both Bledsoe and Rodriguez reflect they were found guilty of battery or attempted battery, not stabbing, and a review of the fixed wing camera mentions no involvement of any weapons other than "clinched fists." Def. Ex. F (Doc. 84-6) at 1, 12.

Kendry Affidavit at 2; Amended Complaint at 5. The nurse who treated Kendry noted he suffered edema on the inside of his lip, with no open areas, and a small scratch on his left shoulder area. Def. Ex. D (Doc. 84-4) at 6. The nurse cleaned the scratch and applied a Band-aid. The discharge instructions directed Kendry to sign up for a sick call if needed. Id. at 7. Additionally, a shift supervisor who visited Kendry in the medical unit following the attack determined that no outside medical treatment was warranted for his injuries, which were noted to be a "small laceration to his bottom lip and small scratch mark to his left shoulder area." Id. at 3.

In support of their Motion for Summary Judgment, Roach and Kraft submitted the declaration of Albert Carl Maier, M.D., J.D., who concluded Kendry's claimed injuries are unsupported by the medical records. According to Dr. Maier, the "only injuries noted were a swollen lip and a scratch on his shoulder." Id. at 1. Dr. Maier stated that a review of Kendry's medical file from 2013 through October 2015 revealed no evidence of Kendry seeking additional treatment for injuries related to the September 29, 2014 attack. Id. With respect to Kendry's alleged vision problems resulting from the attack, Dr. Maier refers to a pre-attack inmate request (dated August 8, 2014) in which Kendry complained about his eyesight. In that request, Kendry wrote that his "eyesight [was] getting worse and it seems like [he's] going blind . . . and [his] vision is constantly blurred for long periods of time." Id. at 9. Dr. Maier also disputed Kendry's claims about his memory and speech based upon two post-attack mental health records (dated January 2 and January 30,

2015) in which the doctor noted normal speech, memory, and thought process.[10] Id. at 10-11.

## IV. Law and Conclusions

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, prison officials are not constitutionally liable for every inmate-on-inmate attack. Id. Instead, it is "[a] prison official's 'deliberate indifference' to a substantial risk of harm to an inmate [that] violates the Eighth Amendment." Id. at 828. The deliberate indifference standard requires the plaintiff to demonstrate that the prison official subjectively was aware of a risk of harm: mere negligence is not sufficient. Id. at 828, 835-36.

> A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted and alterations adopted) (emphasis added). ...
> Moreover, this must be shown by "conduct that is more than gross negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010). "[T]he deliberate indifference standard—and the subjective awareness required by it—is far more onerous than normal tort-based standards of conduct sounding in negligence: 'Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983.'" Goodman, 718 F.3d at 1332 (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Losey v. Thompson, 596 F. App'x 783, 788-89 (11th Cir. 2015).

A prison official subjectively knows of a risk of harm to an inmate when he "disregards an excessive risk to [the] inmate's health or safety." Farmer, 511 U.S. at 837.

---

[10] According to those records, Kendry was treating with a mental health professional for depression, seemingly unrelated to the attack.

Thus, to establish an Eighth Amendment violation, an inmate must show a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (citing Farmer, 511 U.S. at 837, 844). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990).

Prison officials may avoid Eighth Amendment liability in one of three ways: (1) showing that they were not aware "of the underlying facts indicating a sufficiently substantial danger"; (2) admitting awareness of "the underlying facts" of a substantial danger, but believing the danger was nonexistent; or (3) claiming to have responded reasonably to a known substantial danger. Rodriguez, 508 F.3d at 617-18 (citing Farmer, 511 U.S. at 844). In this case, Roach and Kraft rely on the first method: they assert they were unaware of a substantial danger because Kendry never reported a threat. Defense Motion at 2, 4-5. Thus, the subjective knowledge requirement is at issue.

To satisfy the subjective knowledge requirement, a plaintiff must show that a prison official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. Whether a prison official "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from the circumstantial evidence." Rodriguez, 508 F.3d at 617 (emphasis in original). However, the Eleventh Circuit has recognized that "'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of

11

harm'." Woodyard v. Ala. Dep't of Corr., 700 F. App'x 927, 932 (11th Cir. 2017) (quoting Prater v. Dahm, 89 F.3d 538, 542 (8th Cir. 1996)).

Notably, where a plaintiff presents evidence that he reported only a vague, generalized fear or problems with other inmates rather than a specific and particularized threat of harm, courts have not hesitated to grant summary judgment in favor of the prison officials. See, e.g., Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003); McBride v. Rivers, 170 F. App'x 648, 655 (11th Cir. 2006). For example, in Carter, the plaintiff submitted evidence that prison officials knew the inmate who later attacked him was a "problem inmate" and was roaming the cell he shared with plaintiff like a "caged animal." 352 F.3d at 1348. He further presented evidence that he told prison officials that the inmate was acting crazy, that the inmate intended to fake a hanging, and that the inmate told the plaintiff that he (the plaintiff) would help fake the hanging "one way or another." Id. The Carter court found these circumstances to be insufficient to create a genuine issue of fact on the question of whether the defendant prison officials were actually, subjectively aware of a substantial risk of serious harm to the plaintiff. Id. at 1349. In doing so, the court noted that there was no evidence that the plaintiff explicitly told the prison officials that he feared his cellmate or that his cellmate had clearly threatened him. Id. The court also found that the cellmate's statement that the plaintiff would help him fake a hanging required an inappropriate "inferential leap" in order for the prison officials to interpret the statement as a threat to the plaintiff. Id. at 1349. Last, the court noted that the plaintiff never told prison officials that he considered the inmate's statements to be a threat. Id. at 1350. At most, the court said, the prison officials were negligent by failing to separate the inmates, but such was insufficient to justify liability under § 1983. Id. See also Estate of

Owens v. GEO Grp., Inc., 660 F. App'x 763, 770 (11th Cir. 2016) (finding no evidence that the prison official "had any belief, suspicion, knowledge, or inclination that [the inmate] would attack when he did" or that the inmate posed any particularized threat to the plaintiff). But see Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1101 (11th Cir. 2014) (holding the district court erred in granting summary judgment where the plaintiff presented evidence that the defendants knew of the inmate's violent past, and, the day before the alleged incident, the inmate set fire in the cell he shared with the plaintiff, yet defendants placed them both back in the cell together despite plaintiff's complaints of fear).

In McBride, the court affirmed the entry of summary judgment in favor of prison officials, despite the fact that the plaintiff presented evidence that he specifically asked not to be placed in a cell with the inmate who later attacked him. 170 F. App'x at 655. According to the record, the plaintiff reported telling a prison guard, "me and that dude had problems. I'm in fear for my life. Don't put me in the cell with him." Id. The court found this evidence to be insufficient to create a genuine issue of fact as to whether the prison officials were subjectively aware of a serious risk of harm. In reaching its conclusion, the court noted that the plaintiff did not identify a "specific prior incident, from which the defendant could infer that a substantial risk existed." Id.

In contrast, where a plaintiff presents evidence of a more particularized threat, a jury question will exist. Rodriguez, 508 F.3d at 620-21. The Eleventh Circuit's decision in Rodriguez is instructive here because it involved somewhat similar circumstances and provides an example of a threat report sufficiently specific to create a jury question. Id. In Rodriguez, the court, recounting the facts in the light most favorable to the plaintiff,

summarized that the plaintiff reported to two prison guards on at least two occasions that he wanted to be transferred because Latin Kings gang members "wanted to kill [him]" after he renounced his affiliation with the gang. Id. at 614-16. The plaintiff was stabbed only hours after he was released back to the general population, a decision made at a classification review meeting in which the defendants participated and after the plaintiff had again requested to be transferred. Id. at 615-16. With regard to the subjective knowledge inquiry, one defendant, in a motion for summary judgment, denied any knowledge of the reports. Id. at 619. The other defendant, however, in a motion for directed verdict at trial, acknowledged the plaintiff reported a threat, but, relying on Carter, argued the threat was too vague. Id. at 621. The court rejected that defendant's reliance on Carter, finding that the plaintiff's reported threat was more specific than that of the Carter plaintiff's. Id. at 621-22. In doing so, the court determined that a jury could find that the plaintiff reported the following:

> (1) that he was a former Latin King who decided to renounce his membership; (2) that members of the Latin Kings had threatened to kill him when he returned to the compound in retaliation for his renunciation; (3) that the compound at [the correctional facility] was heavily populated with Latin Kings; and (4) that, in order to prevent an attempt on his life, he needed either to be transferred to another institution or to be placed in protective custody. These are things that the inmate in Carter did not do.

Id. at 621.

Here, Kendry's alleged reported threat, like that in Carter, fails to reach the specificity required to impute actual knowledge to Roach and Kraft of a substantial risk of serious harm to Kendry. As a preliminary matter, the Court notes that Defendants frame the argument incorrectly. The question before the Court at summary judgment is not

14

whether Kendry in fact reported the alleged threat at all. He has sworn that he did and sworn to the substance of his statements to Kraft and Roach. At this stage of the proceedings, the Court must accept his statements as the facts. Thus, the proper question before the Court is whether Kendry's reported threat was sufficiently specific to impute to Roach and Kraft knowledge of a substantial risk of serious harm.[11]

Even accepting Kendry's allegations as true, Kendry's reports to Roach and Kraft amount to no more than vague references to "problems" with his cellmate or statements of generalized fear. See Carter, 352 F.3d at 1349. According to Kendry, he told Kraft "he was having problems with his roommate, inmate Bledsoe . . . and that he needed a room change or protective custody . . . because inmate Bledsoe had stated: 'I don't like you faggot ass n***er and they need to kill all you mother****ers.'" Kendry Affidavit at 3 (emphasis added). Kendry asserts that, later that afternoon, he informed Roach about Bledsoe's "threat on his life" and requested protection but never suggests he made any statement beyond, or more specific than, what he reported to Kraft. Id. In other words, what Kendry reported was that he and Bledsoe were having problems, he wanted protection, Bledsoe did not like Kendry, and Bledsoe believed that all gay African American inmates should be killed. This generalized statement is much less specific than the one reported by the plaintiff in Rodriguez. See 508 F.3d at 621-22. The Rodriguez plaintiff articulated a particularized threat of harm to himself, rather than a generalized

---

[11] The fact that Roach and Kraft flatly deny that Kendry reported a threat of fear (or suggest his sworn statement lacks credibility), see Defense Motion at 6, provides insufficient grounds on which to grant summary judgment in their favor. In ruling on a motion for summary judgment, a court cannot engage in impermissible credibility determinations. See Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1304 (11th Cir. 2016); see also Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (stating that, in a motion for summary judgment, it is improper to simply attack the opposing party's credibility); Hall v. Bennett, 447 F. App'x 921, 924 (11th Cir. 2011) (reversing the district court's grant of summary judgment because the court improperly "weighed the witnesses' credibility by favoring" the officer's account over the prisoner-plaintiff's).

threat or derogatory statements about a particular class of people. He reported that gang members "wanted to kill [him]," and he referenced a specific, articulable event that caused his fear—renouncing his affiliation with the gang and a specific gang population. Id. Kendry's after-the-fact allegation that his attack was at the hands of Latin Kings gang members does not save his claim. Importantly, Kendry does not assert in his sworn affidavit or his Amended Complaint that he informed either Roach or Kraft, when he allegedly reported the threat, that it came from a known gang member. See Kendry Affidavit. Instead, Kendry reported a threat from his "cellmate" or another "inmate." See id. at 3.

Moreover, this Court does not read the Rodriguez opinion to suggest that all inmate reports of gang-related threats result in a heightened duty for prison officials to act in the absence of a specific threat report based on an articulable incident. See 508 F.3d at 621-22. Rather, the Rodriguez court's discussion of gang involvement related to the specific facts the plaintiff had reported in that case. Indeed, the Rodriguez court observed that, "[i]n the context of this case, we conclude that the gang-related threats made on [plaintiff's] life, which were explicitly reported to prison officials, present a substantial enough risk of harm to trigger a prison official's Eighth Amendment duty to act." Id. at 617 n.12 (emphasis added). As such, what the Rodriguez court held was that the plaintiff's reports of gang involvement, in that case, provided the necessary specificity required to create an issue of fact for a jury's determination. See id. at 620-21. Here, Kendry did not even suggest gang involvement. He neither explicitly reported to Roach or Kraft a specific threat of physical harm or death made against him, nor did he indicate that, if a threat were made against him, there was a particular reason that defendants should have

16

understood it as creating a substantial risk of harm. His statements are simply insufficient to create an issue of fact on the question of whether Defendant Roach or Kraft had actual knowledge of a substantial threat of harm to Kendry.

Even if Kendry himself interpreted Bledsoe's statement as a direct threat against his life that is not enough. Imputing to Roach and Kraft actual knowledge of a particularized threat of harm based on Kendry's vague report of generalized fear would require an impermissible "inferential leap." See Carter, 352 F.3d at 1349 ("Defendants would have had to read imaginatively all derogatory and argumentative statements made between prisoners to determine whether substantial risks of serious harm exist."). At most, Kendry's report of Bledsoe's threat can be interpreted as a general expression of hatred toward homosexuals or African Americans. Bledsoe did not tell Kendry that he (Bledsoe) planned to, or even wanted to, physically harm Kendry. If Kendry had reported to Roach and Kraft that Bledsoe stated, "I hate you because you are homosexual, and I am going to kill you," that would be different. Bledsoe, however, merely expressed that some unnamed actors ("they") should kill a class of inmates that included Kendry. Roach and Kraft's failure to act on this complaint amounts, at most, to mere negligence and not deliberate indifference. See id.; see also Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1321 (11th Cir. 2016) ("[I]t is only a heightened degree of culpability that will satisfy the subjective knowledge component of the deliberate indifference standard, a requirement that is 'far more onerous than normal tort-based standards of conduct sounding in negligence.'").

Upon review of the record, the Court concludes that, viewing the facts in the light most favorable to Kendry and drawing reasonable inferences in his favor, there are

insufficient facts from which a jury could reasonably conclude that Roach and Kraft acted with deliberate indifference to a known, substantial risk of serious harm to Kendry. As such, the Defendants' Motion for Summary Judgment is due to be granted and Kendry's Motion is due to be denied.[12]

Therefore, it is now **ORDERED**:

1. The Court directs the Clerk of Court to change the docket to reflect the correct initial of Defendant Kraft's first name as "E." See Defense Motion (Doc. 84) at 1 n.1.

2. Kendry's Motion for Summary Judgment (Doc. 78) is **DENIED**.

3. Roach and Kraft's Motion for Summary Judgment (Doc. 84) is **GRANTED**.

4. The Clerk shall enter judgment in favor of Defendants Roach and Kraft as well as Defendants Todd and Barnes pursuant to the Court's August 25, 2016 Order (Doc. 56).[13]

5. The Clerk shall terminate all pending motions and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of January, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-6 1/30
c:
Simmie Kendry, FDOC #102106
Counsel of Record

---

[12] In light of the Court's ruling, it is unnecessary to address whether Kendry suffered more than a de minimis physical injury.
[13] Defendants Todd and Barnes were previously dismissed from this action, but the Court withheld judgment in their favor pending adjudication of this action as a whole.